# John A. Keedy *vs.* John Newcomer.

Whenever a paper proposed to be given in evidence, in the statement of it in the offer, differs from the paper itself, the paper itself must enable the court to judge, whether it be admissible.

Testimony which affords very unsafe *data* of which to predicate the conclusion sought to be arrived at, ought to be rejected.

In an action against a sheriff, for returning a writ of *fi. fa.* "*nulla bona*," other writs of *fi. fa.*, issued on the same day, or about the same time, and either countermanded or returned *N. B.*, are evidence to show the circumstances of the debtor.

Proof that the neighbors of the defendant, (against whom the *fi. fa.* for a return of which *N. B.* the suit is brought,) cultivated a certain proportion or number of acres of his land, cannot be admissible to prove the number of acres of land which the debtor, the *fi. fa.* against whom was returned *N. B.*, was accustomed to cultivate, or cultivated in any one year.

A witness having proved that a distillery was carried on as usual, during a certain period, and hog pens were as full as usual; another witness is allowed to prove, what was the usual number of hogs raised, and what the daily produce of the distillery.

This is an appeal from Washington county court, in a suit brought by the appellant against the appellee, the late sheriff of said county, for a false return of a *fi. fa.*, against Abraham Barnes, placed in the hands of the appellee, as sheriff. This *fi. fa.* was issued 19th December 1838, returnable March term 1839. This suit was brought 3rd December 1847.

At the trial of this cause, the plaintiff took seven exceptions, and the verdict being against him, the questions presented by these exceptions are now to be disposed of.

*1st Exception.* After adducing various other proof, in order to satisfy the jury, that Abraham Barnes, against whom the *fi. fa.* was issued, had property to satisfy the judgment, the plaintiff offered in evidence, with the same object, another *fi. fa.* against Barnes, returnable, (as it appeared by the paper itself,) to March 1840, for upwards of $2000, and returned by the same sheriff, "*Made.*" This testimony was objected to by the defendant, and was declared by the court to be inadmissible. Plaintiff excepted.

*2nd Exception.* Because the court refused to permit the plaintiff to offer in evidence the declarations of G. Ross Beall, (who was dead,) made at a time when he and his partner issued a *fi. fa.* against Barnes, and in relation to what was done with it.

*3rd Exception.* Because the court admitted testimony offered by defendant, and having a tendency to prove, that there were liens on the property of Barnes, to a larger amount than its value, such as bills of sale by Barnes, and *fi. fas.* issued against his property.

*4th Exception.* Because the court rejected the testimony of a witness offered by the plaintiff, going to prove what number of acres were put out and cultivated in winter grain, and what was Barnes' usual crop.

*5th Exception.* Because the court would not permit the plaintiff to prove by a witness, what proportion of the lands on their farms was put in winter grain by the farmers in the neighborhood.

*6th Exception.* Because the plaintiff was not permitted to prove by a witness, what number of hogs were kept by Barnes in the pens, from the beginning of 1836 to August 1848.

*7th Exception.* Because testimony offered by plaintiff and going to prove, the number of barrels of whiskey manufactured in Barnes' distillery, up to August 1838, was rejected.

This case was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

By *Jervis Spencer* for appellant, and *Price* for appellee.

*Spencer* for appellant.

The question presented by the first bill of exceptions, is upon the rejection of this testimony by the court, on the ground that the *fi. fa.* offered in evidence, was not in the hands of the sheriff, until after the return day of the *fi. fa.* in the case of *Keedy vs. Barnes.*

The question in issue certainly was, whether Barnes had property within reach of the sheriff, whilst Keedy's *fi. fa.* was

in his hands? But that question, like every other, is to be tried by circumstantial as well as positive proof. It may be said we had evidence enough without it. The jury seem to have thought otherwise; and who can say that the scale would not have been turned in favor of the plaintiff, if he had had the benefit of this proof. The plaintiff had proved, that Barnes had possessed a large estate, and this *fi. fa.* and return by the defendant, would have shown, that it was still available for the satisfaction of executions against him, on later judgments, during the spring, subsequent to the date of Keedy's *fi. fa.* If this had been the only *fi. fa.*, except Keedy's, offered in evidence, the force of it would have struck every mind. In connection with the proof of antecedent property, it would have shown a continuing capacity to satisfy executions, down to a period subsequent to Keedy's execution, with almost mathematical certainty. The plaintiff could not be deprived of his right to use this testimony, because he had used similar evidence applying directly to the very time in question. The pecuniary capacity is like the mental capacity, the proof is to show its existence or non-existence at a particular time; *but for the purpose of shedding light upon the subject, evidence of its condition, both before and after that period, may be produced. Davis vs. Calvert, et al.,* 5 G. & J., 300.

The rule is, that if a rational mind might draw the conclusion, from the fact of the previous possession of property by Barnes, coupled with the fact offered to be proved, to wit, that an execution for over $2000, issued against him in the spring of 1839, was levied and *made,* that an execution against him for $600 or $700, might have been levied and made in January, February and March, 1839, the evidence ought to have been received.

*Furguson vs. Tucker,* 2 H. & G., 189, 190. *Morris vs. Bankley and Caldwell,* 1 H. & G., 109. *Davis vs. Davis, et al.,* 7 H. & J., 39. *Davis, et al., vs. Barney,* 2 G. & J., 404. 1 *Starkie on Ev.,* 48, 6 *Am. Ed. State vs. McAlister,* 11 Ship., 139. *Van Buren vs. Wills,* 19 *Wend.,* 203. *Granger vs. Warrington,* 3 *Gillman,* 299, 307. *Truman vs. People,* 4 *Denio,* 502.

The importance of this testimony is more manifest in the subsequent stages of the case.

The defendant gave in evidence bills of sale, judgments and *fi. fas.*, executed by and against Barnes, of a date prior to the judgment and *fi. fa.* of Keedy, which, it was alleged, absorbed the property of Barnes. It therefore became important for the plaintiff to show the continuing capacity to satisfy executions. If the last *fi. fa.* had been satisfied out of property acquired afterwards, the fact could have been easily proved. This evidence should have been taken in connection with the other facts of the case, and in the absence of distinct proof of satisfaction out of after acquired property, it would have been a fair argument, sustained by legal principle, for the plaintiff, that in the embarrassed situation of Barnes, with so many judgments and *fi. fas.* against him, it was not likely that he should buy so much property between March and May 1839; that it was a continuing possession. 1 *Starkie*, 55, 6 *Am. Ed.*

With regard to the 2nd bill of exceptions, it is submitted to the consideration of the court, whether the declarations of G. Ross Beall, deceased, at the time of issuing the *fi. fa.* in the case of Bell and Kealhofer, when he had no interest to misrepresent, and they were associated with the transaction, are not competent proof in this cause, as part of the *res gesta.* 1 *Stark. Ev.*, 57, 6*th Amer. Ed.*

In the 3rd bill of exceptions, the defendant offered in evidence sundry *fi. fas.* against Barnes, some of which are of the same date as the *fi. fa.* of Keedy; one of a subsequent date, and some antecedent; some without any return at all; some returned, countermanded; and not one levied, and made by the sheriff; which *fi. fas.* were objected to by the plaintiff, but admitted as evidence by the court.

This evidence could not be competent. The judgments were in evidence, and may have been rightly so, as they affected the value of the land, being liens upon it. It does not appear why some of these *fi. fas.* were not levied. Those that were countermanded, were, of course, *non-entities.*

The fact of their being in the sheriff's hands, if indeed they were so, (for it is hard to suppose, if they were really delivered to him, he would have kept them in his hands so long without a return, unless he had authority to do it,) could not affect his liability to levy Keady's *fi. fa.* It was his imperative duty to levy where there was property. *Watson on Sheriff*, 184, *mar. Ib.*, 82, *mar.* 176, '7. *Sewell on Sheriff*, 453, *mar.*, 259, 260. There is not a word of evidence that these *fi. fas.* ever were delivered to the sheriff, (not even an endorsment,) except those that are returned, *"Countermanded;"* and one, *"Made to Plff's Atty."* But if they were delivered they have not been returned, and may have been satisfied. If satisfied, they were made otherwise than out of the property we have proved. If not made, and Newcomer had authority not to levy, this fact gave the priority to Keady's *fi. fa. Sewel on Shff.*, 260, *mar.* The sheriff would hardly expect that he should be allowed to shield himself under a *presumption* that he may have violated *his duty*, with regard to these *fi. fas.*, by wantonly permitting them to die in his hands. They were not levied on any of the property which the plaintiff proved to have been liable to levy, and therefore, as they could not properly affect the issue in this case, they ought not to have been permitted to embarrass the cause.

After the introduction of the defendant's evidence, it became necsssary for the plaintiff to make his proof as explicit as possible, as to the various kinds of personal property liable to execution. There was testimony of the defendant having large farms, and many fields; and George Beard had sworn that the farms were cultivated at that time in winter grain, as they commonly had been before, and as it was customary in that neighborhood for farmers to cultivate their farms; that Barnes was also carrying on a distillery, and manufacturing whiskey about as fast as he had been for some considerable time previous; that by the freezing of the canal during the winter, and the means of transportation being lost, considerable quantities had accumulated; that there were two large

hog pens attached to the distillery, that he would suppose there were 100 hogs in the two pens; that said pens looked about as full as they commonly did, &c.; but he could not say how many acres there were in winter grain; how many barrels of whiskey were made per day, how many barrels had accumulated, or how many hogs there were in the pen. To help this testimony, and make it as specific as in the nature of things it was capable of being made, the plaintiff offered to prove by George Brua, the number of acres in winter grain, wheat and rye, which Barnes commonly put out and cultivated. This testimony was rejected by the court, and forms the subject of the 4th bill of exceptions.

The plaintiff also proposed to prove by Brua, what proportion of their lands, on an average, was put in winter grain by the farmers of that neighborhood. This was also rejected by the court, and forms the subject of the 6th bill of exceptions.

The plaintiff also proposed to prove by Martin Speck, that there were commonly kept in each of the pens one hundred hogs, from the beginning of 1836 till the last of August 1848.

This was also refused by the court, and forms the subject of the 6th bill of exceptions.

The plaintiff also proposed to prove by Martin Speck, that up to August 1838, there were manufactured three barrels of whiskey a day, in the distillery. This testimony was also refused by the court, and is the occasion of the 7th bill of exceptions.

These refusals of the court were almost tantamount to a denial of any proof upon these various subjects, unless it should be by some one who at the time measured the acres of wheat and rye, counted the number of hogs in the pens, and counted the number of barrels of whiskey each day, as the same were manufactured, and had the astonishing capacity of memory, to retain it all in detail. Such a rule would be practically a denial of justice in every similar case. A witness states that Barnes' lands had, in winter grain, the usual number of acres, but he cannot say how many. The plaintiff

calls another witness, one familiar with Barnes' mode of farm-
ing, to prove how much the usual number is. This would
strike one as being a natural course of inquiry, and the only
fair one the case is susceptible of. It is actual demonstra-
tion, for if the witnesses speak the truth there is actual cer-
tainty, and goes much further than the rules of evidence re
quire. If there had been no proof, that the lands were cul-
tivated at that time in the usual manner, the rejected proof
would still have been good; for that they were cultivated in
the usual manner, is a natural presumption. The same argu-
ment applies to the 4th, 5th, 6th and 7th bills of exception.
So far from this evidence not being sufficient for a sane mind
to deduce a conclusion from, there is no room for doubt, if
the witnesses are correct in their testimony; and the court
had no right to believe any thing else.

See the authorities referred to on the 1st bill of exceptions;
also 1 *Starkie*, 55, and *Truman vs. People*, 4 *Denio*, 502.

The court, by rejecting this testimony, gave occasion for
the opposite side to say, that as no amounts were proved
nothing was proved, and we ask the interposition of the Court
of Appeals, to give us the benefit of the testimony, to which
we are entitled on legal principles.

*Price* for appellee.

After adducing a large amount of evidence of various de-
scriptions, for the purpose of shewing that Abraham Barnes,
the defendant in the judgment and execution, had property
real and personal, out of which the *fi. fa.* could have been
made, the plaintiff offered to give in evidence a judgment of
Beale and Kealhofer against Abraham Barnes, and a *fi. fa.*
issued thereon on the 4th day of May 1839, and returnable to
November term 1839; which was returned by the said sheriff,
"*Made.*"

*1st Exception.* The defendant objected to the admissibility
of this last mentioned execution and return, upon the ground
that it did not go into the hands of the defendant, as sheriff,
until after the return of the execution in the case of *Keedy vs.*

*Barnes.* The court ruled out the testimony so offered, and the plaintiff excepted.

The appellee contends, that the testimony so offered was clearly inadmissible, being irrelevant to the issue.　1 *Green. Evid.*, 51, 52, 53.

The execution void, a term intervening between the issue and the return day.

*2nd Exception.* The plaintiff then offered to prove by George Kealhofer, that he was, in 1839, a partner of George Ross Beale, now deceased.　That at the time of issuing the execution above mentioned, of himself and partner, it was understood between them, that the same should be levied on a wheat crop of said Barnes, and that said Beall should so instruct the said sheriff; and that said Beall did communicate to witness, that he had sent the sheriff to make said levy; and that the money was afterwards paid by Mr. Yost, one of Barnes' trustees.　Defendant objected, and the court ruled out the testimony.　Plaintiff excepted.　1 *Green. Evid.*, sec. 118, *p.* 133, *n.* 2.

This testimony was clearly inadmissible, as hearsay, and as being irrelevant.　It is not understood how it can be considered a part of the *res gesta.*

*3rd Exception.* The defendant offered a bill of sale from A. Barnes to John Blackford, and the assignment thereof to John H. Thomas, conveying all the negroes and personal property of Barnes; also a large list of judgments, and executions upon the same, of a date prior to that of the *fi. fa.*, and also issued on the same day with that *fi. fa.*　The object of this testimony was to show, that both the personal and real property of Barnes, were incumbered by judgments, and bound by executions and other liens, to an amount beyond their value, and that, therefore, there was nothing out of which the *fi. fa.* in question could be satisfied.

The objection to this evidence was upon the ground, that it did not appear that the said *fi. fas.* were levied upon, or made out of the real or personal property of Barnes.

It will be remembered, that this investigation took place more than nine years after these executions were returned, and

it was impossible, therefore, to give a very particular account of the manner in which they were satisfied; or how it was that others were returned *nulla bona.* But the court did not feel itself authorised to withhold the evidence from the jury, and the appellee will contend that this decision was right.

*4th Exception.* After the introduction of some further testimony by the defendant, the plaintiff offered to prove by George Brua, the number of acres in winter grain, wheat and rye, commonly put out and cultivated, but the court rejected this testimony, and the appellant will maintain that this decision was right.

The witness was not offered to prove what the crop of Barnes was, in the fall and winter of 1838 and 1839, but the plaintiff wanted to come at that fact by showing what was his usual crop. This would be too vague and uncertain to convict an officer of breach of duty, after a lapse of so long a time. 7 *H. & J.,* 39, *Davis vs. Davis.*

*5th Exception.* The plaintiff then offered to prove by the same witness, what proportion of all the land on their farms, on an average, was put in winter grain, *by the farmers in the neighborhood.* Rejected, and right.

*6th Exception.* The plaintiff offered to prove by M. Speck, that from the beginning of 1836 *till the spring of* 1838, *and that up to the month of August* 1838, there were commonly kept in the pens at the distillery of Barnes, about 100 hogs in each pen, and that it took about four months to fatten them.

Evidence rejected, and right.

What right would the jury have to say from this evidence, that from the 19th December 1838, to the fourth Monday of March 1839, there were any hogs at this distillery subject to this execution.

*7th Exception.* The plaintiff then offered to prove by same witness, that up to August 1838, they manufactured in the said distillery, about three barrels of whiskey per day. Evidence rejected, and right.

The opinion of the court was delivered by LE GRAND, C. J.

We discover error in the ruling of the county court, in regard to the sixth and seventh exceptions, but in nothing else.

After giving testimony to show that Barnes had property, both personal and real, sufficient to enable the sheriff to have satisfied out of it *the fieri facias* issued by the plaintiff, the latter *proposed* to give in evidence a judgment of Beale and Kealhofer against Barnes, and a *fi. fa.*, issued thereon on the 4th day of May 1839, and returnable to November term 1839, which was returned, "*Made.*" To the admissibility of this testimony, the defendant objected, and the court sustained the objection; and it is this action of the county court which constitutes the first exception. The *fieri facias*, the return to which constitutes the cause of action in this case, was issued on the 19th day of December 1838, and returnable on the 4th Monday of March 1839.

An examination of the record will show that the *fieri facias* was not returnable at the time stated in the offer. It was issued the 4th day of May 1839, and made returnable on the 4th Monday of March thereafter. According to the case of *O'Hara vs. Hammond*, 2 *Harris and Gill*, 111, whenever the offer in its description of a paper proposed to be given in evidence differs from the paper, the paper itself must determine whether it be admissible. This being so, the writ offered in evidence was not returnable until a year after the *fieri facias* sued out by the plaintiff. It might very well be, that a person should have property in March 1840, sufficient to satisfy a writ, and yet, wholly without any in March 1839. The vicissitudes of life, and especially of that of men extensively engaged in business, make such testimony very unsafe data on which to predicate the conclusion sought to be arrived at in this case. The period is entirely too remote, and, therefore, we think the court did right in rejecting it.

The second exception is founded on the refusal of the court to allow the plaintiff to prove a conversation between George Kealhofer and his former partner, Ross Beale, in regard to an

execution which they had caused to be issued against Barnes. It is not pretended the defendant was present at this conversation, but merely that his deceased partner told witness that he had communicated their wishes to the sheriff. To have admitted such testimony, would have been to disregard every rule of evidence.

The refusal of the court to reject several writs of *fieri facias*, issued, some before, and others, on the same day with that sued out by the plaintiff, and which were either countermanded or returned *nulla bona*, forms the third exception. An examination of the original record shows that the writ issued at the instance of Beatty and Sanders, was sued out on the 13th day of December 1838, instead of the 28th day of December, as stated in the printed copy.

It is a general rule, that in all collateral inquiries, the return of the sheriff must be taken as correct, and this being so, there could scarcely be stronger evidence to show the insolvency, or at least the want of ostensible property, than the return of *nulla bona* to writs of *fieri facias*, immediately before and about the time of the period involved in the controversy.

The plaintiff proposed to prove what number of acres Barnes *commonly* put out and cultivated, and also, what was the habit of the farmers in the neighborhood, in regard to the number of acres appropriated to the growth of winter grain. The rejection of this testimony constitutes the fourth and fifth exceptions. It was impossible for the jury to draw any clear ideas from evidence so wholly irrelevant. The plaintiff did not propose to show that Barnes had in the ground winter grain, during the winter of 1838 and 1839; which was a fact quite susceptible of easy proof if it existed. The habits of the neighborhood could not enlighten the jury as to those of Barnes. We take it as no very unusual thing, that thriving and industrious farmers find themselves neighbors to those who are not so distinguished for those qualities.

The court erred in rejecting the testimony offered in the sixth and seventh bills of exception. One of the witnesses,

George Beard, had proved that the distillery was carried on as usual, from December 1838 to March 1839, and that the hog pens were as full as usual, but he could not state the number of hogs nor the quantity of whiskey made.    Specks testimony was offered to show what was the usual number of hogs, and the daily produce of the distillery.    Standing alone, this evidence was properly rejected, but in connection with the other testimony in the cause, it tended to prove that Barnes had property from which the plaintiff's debt could have been made, and should have gone to the jury.    We concur with the court below in regard to the first, second, third, fourth and fifth exceptions, and differ from them in regard to the sixth and seventh.

*Judgment reversed and procedendo awarded.*